IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jeremy John Wells, | ) |
| Plaintiff, | ) Civil Action No. 6:15-1344-MBS-KFM |
| | ) |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| | ) |
| Director Brian Sterling, | ) |
| Warden Bernard McKey, and | ) |
| Warden Willie Eagleton, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the defendants' motion for summary judgment (doc. 35). The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## BACKGROUND

On March 26, 2015, the plaintiff, a former inmate of the South Carolina Department of Corrections ("SCDC") and current inmate at the United States Penitentiary in Marion, Illinois, filed the instant civil rights action concerning two main allegations: (1) the practice of SCDC medical personnel not to change their gloves when drawing blood from inmates; and (2) the erroneous calculation of the plaintiff's release date. Defendants SCDC and Medical Department at Kirkland R&E were dismissed and the plaintiff's medical glove claim was dismissed *without prejudice* by order of the Honorable Margaret B. Seymour, Senior United States District Judge, on May 20, 2015 (doc. 15). Defendants McIntyre and

Simmons were dismissed *without prejudice* by Judge Seymour on June 24, 2015 (doc. 32).[1] Accordingly, the only claim remaining before this court is the plaintiff's claim pursuant to Section 1983 for damages for allegedly wrongful past confinement (*see* doc. 15 at 4-5). The remaining defendants are employees of the SCDC.

Prior to filing their answer, the defendants filed a motion for summary judgment (doc. 35) on July 30, 2015, arguing the plaintiff failed to exhaust his administrative remedies, and, therefore, he is procedurally barred from proceeding with this action under the Prison Litigation Reform Act ("PLRA"). In the alternative, the defendants argue that the plaintiff has suffered no injury. The undersigned on August 3, 2015, issued a *Roseboro* order (doc. 59) to apprise the plaintiff of the summary judgment procedure. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff on August 10, 2015, filed his response (doc. 41) to the motion for summary judgment. The defendants filed a reply on August 24, 2015 (doc. 49), and the plaintiff filed a sur-reply on September 30, 2015 (doc. 55).

## **FACTS PRESENTED**

The plaintiff alleges that his right to due process was violated because he did not receive credit for time served as ordered on his sentencing sheets (doc. 1 at 4). Attached to his complaint is an "order amending sentence" signed by the sentencing judge on February 26, 2015, stating that it was the court's intention that the plaintiff would receive credit for time served from February 3, 2012 (doc. 1-2). The plaintiff claims he submitted "a grievance," but he "never got a response" (doc. 1 at 4). The plaintiff alleges that he was "released" four months beyond his "outdate" (*id.*). He claims that if his sentence had been entered correctly, he would have been eligible for parole sooner and would likely have received parole (*id.* at 5).

---

[1] Judge Seymour declined to dismiss the plaintiff's claim regarding the alleged error in calculation of his prison sentence, noting that the plaintiff appeared to raise a claim of wrongful imprisonment similar to that considered by the Fourth Circuit in *Wilson v. Johnson*, 535 F.3d 262 (4th cir. 2008) (holding held that a § 1983 claim seeking damages for past confinement was permissible to allow a habeas ineligible former prisoner to seek redress for the alleged denial of his freedom) (doc. 15 at 4).

In support of their motion for summary judgment, the defendants submitted the declaration of Michael Tindal, the Inmate Grievance Administrator for Evans Correctional Institution (doc. 35-2). In his declaration, Mr. Tindal states that there is no record of any Step 1 or Step 2 grievance filed by the plaintiff concerning the calculation of his sentence (*id.*, Tindal decl. ¶ 6). The defendants also submitted the declaration of Michael J. Stobbe, the Branch Chief for Records Management and Release for the SCDC (doc. 35-3). Mr. Stobbe states in his declaration that the plaintiff was released from the SCDC on March 11, 2015, to the custody of the United States government (*id.,* Stobbe decl. ¶ 4). The plaintiff's federal release date is October 26, 2016 (doc. 35-4).

In his response in opposition to the motion for summary judgment, the plaintiff states that he was directed "in the form of a letter from Brian Sterling's office . . . to direct all issues through inmate email system know as 'kiosk'" (doc. 41 at 1). The plaintiff claims the kiosk system has no method for an inmate to produce printouts, but, during the discovery process, he would request a copy of all correspondence through the kiosk system to show that he "made every effort to have this issue resolved with administrative remedies" (*id.*). The plaintiff also filed a declaration in support of his response in which he contends that he was encouraged to use the institution's "kiosk" and that he created a grievance under the system's heading marked "Grievance" (doc. 43).

In support of their reply, the defendants submitted another declaration from Mr. Tindal, who states that the "kiosk" provides an inmate an attempt to informally resolve an issue prior to filing a formal grievance pursuant to the SCDC's grievance process/policy; to address non-grievable issues; and to cover basic complaints (doc. 49-2, Tindal decl. ¶ 4). If an inmate submits a request for an informal resolution, the appropriate staff member should respond in 45 calendar days. Once an inmate receives a response and if the inmate is not satisfied, then the inmate may file a Step 1 grievance (*id.*). The Step 1 and Step 2 forms used for inmate grievance must be submitted in writing and cannot be submitted through the kiosk (*id.* ¶ 5). According to Mr. Tindal, on February 11, 2015, the plaintiff wrote a kiosk message explaining that he was being held beyond his max-out date. The message

3

was not processed as the plaintiff was thereafter released from SCDC custody (*id.* ¶ 6). Mr. Tindal further states in his declaration that an inmate's allegations regarding an erroneous sentence calculation is a grievable issue and would require the submission of a Step 1 grievance and Step 2 appeal (*id.* ¶ 9). However, there is no record of the plaintiff submitting any grievance regarding the matter (*id.* ¶¶ 6, 8).

The plaintiff has experience with the SCDC grievance policy. According to Mr. Tindal, the plaintiff filed only one grievance (KCI 1320-14), which was a medical grievance (doc. 49-2, Tindal decl. ¶ 7). In his complaint, the plaintiff states that he filed a Step 1 grievance with regard to his claim that medical staff did not change their gloves when drawing blood from inmates[2] (doc. 1 at 3). After receiving an answer approximately ten days later, he then filed a Step 2 appeal on November 15, 2014, but did not receive an answer to that appeal within the time set forth by SCDC policy (*id.*).

In his sur-reply, the plaintiff states that the letter from Director Sterling was "presented to this court either at the time of the original filing of this case . . . or during the filing of the habeas corpus action in this court" (doc. 55 at 2). The letter was not attached to the complaint in this action; however, it was attached to the plaintiff's petition in his action in this court seeking habeas corpus relief under 28 U.S.C. § 2241 (*Wells v. Eagleton*, C.A. No. 6:15-703-MBS-KFM, doc. 1-4). The court may take judicial notice of the filings in the plaintiff's Section 2241 case. *See generally, Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir.1970); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) (federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to matters at issue). The letter is a response from Director Sterling's office to the plaintiff's correspondence asking for assistance in getting credit for time served. The plaintiff's letter is dated January 3, 2015, and the response from the director's office, dated February 5, 2015, states that the plaintiff's Request to Staff Member form plus attachments are being returned to him and further directs that the

---

[2]As noted above, the medical glove claim has been dismissed.

4

plaintiff "will have to enter his concerns through the 'KIOSK Automated Request to Staff System' " (C.A. No. 6:15-703-MBS-KFM, doc. 1-4).[3]  The plaintiff claims that he filed a "grievance" through the kiosk system as directed by Director Sterling, the defendants have been deceitful in this action, and the defendants' actions in inhibiting his exhaustion of remedies should estop them from raising his failure to exhaust as a defense (doc. 55 at 2-6).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise,

---

[3]The undersigned will direct the Clerk of Court make the letter part of the record in this action by filing the letter as an exhibit to the plaintiff's sur-reply.

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741(2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the

administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir.1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc*., 407 F.3d 674, 677 (4th Cir.2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681. However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Viewing the evidence before this court in a light most favorable to the plaintiff, on or about February 5, 2015, he was instructed by Director Sterling's office that he would need "to enter his concerns [regarding receiving credit for time served] through the 'KIOSK Automated Request to Staff System.'" Thereafter, on February 11, 2015, the plaintiff wrote a kiosk message explaining that he was being held beyond his max-out date. There is no indication in the record that the plaintiff was misled that he could file a formal Step 1 grievance through the kiosk, as the letter from the director's office specifically refers to the "KIOSK Automated *Request to Staff* System," which is the informal resolution stage prior to the filing of a Step 1 grievance (doc. 49-2, Tindal decl. ¶ 4). Moreover, the evidence before the court is that the Step 1 and Step 2 forms used for inmate grievances must be submitted in writing and cannot be submitted through the kiosk (*id. ¶ 5*). The declarations

7

are clear that the plaintiff never submitted a Step 1 grievance regarding the sentence calculation issue. Moreover, the plaintiff was clearly familiar with the SCDC grievance procedure as he previously utilized it by filing a Step 1 grievance and Step 2 appeal on another issue (*see* doc. 49-2, Tindal decl. ¶ 7; doc. 1 at 3). Accordingly, the undersigned recommends that the plaintiff's complaint be dismissed for failure to exhaust his administrative remedies.

## <u>CONCLUSION AND RECOMMENDATION</u>

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 35) be granted. Should the district court adopt this recommendation, the plaintiff's pending nondispositive motion (doc. 44) will be rendered moot.[4] As discussed above, the Clerk of Court is directed to file document 1-4 in *Wells v. Eagleton*, Civil Action No. 6:15-703-MBS-KFM, as an exhibit to the plaintiff's sur-reply (doc. 55) in the instant case. The attention of the parties is directed to the notice on the next page.

January 12, 2016                                   s/ Kevin F. McDonald
Greenville, South Carolina                        United States Magistrate Judge

---

[4]Two weeks after the defendants filed their motion for summary judgment and after filing his response in opposition to the motion, the plaintiff filed a "motion for discovery," asking that the court order the defendants to produce certain documents (doc. 44). There is no indication that the plaintiff served a request to produce these documents on the defendants pursuant to Federal Rule of Civil Procedure 34. Accordingly, an order compelling the defendants to provide such documents would not be appropriate under Rule 37. *See* Fed.R.Civ.P. 37(a)(3)(B). Discovery requests are not to be filed with the court. *See* Fed. R. Civ. P. 5(d)(1) ("[T]he following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: . . . interrogatories, requests for documents or tangible things . . . ."); Local Civ. Rule 5.01 (D.S.C.) (same).